IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:18-CV-00091-FL

| | | |
|---|---|---|
| ARTHUR LEE EVERETT, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| KATRINA REDMON, individually and in | ) | |
| her official capacity as the Chief Executive | ) | ORDER |
| Officer of the Housing Authority of the | ) | |
| City of Wilmington, North Carolina, and | ) | |
| MATT SCAPARRO, individually and in | ) | |
| his official capacity as the Director of | ) | |
| Property Management for the Housing | ) | |
| Authority of the City of Wilmington, | ) | |
| North Carolina, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion to dismiss for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 19). The issues raised have been fully

briefed by the parties, and in this posture are ripe for decision. For the following reasons,

defendants' motion is granted in part and denied as moot in remaining part.

## STATEMENT OF THE CASE

This action, commenced on May 29, 2018, concerns plaintiff's termination of employment

from the Housing Authority of the City of Wilmington, North Carolina ("Housing Authority").

Plaintiff asserts federal claims against defendants under 42 U.S.C. §§ 1983, 1985, and 1986.

Plaintiff also raises state common law claims for negligent supervision, defamation, and intentional

infliction of emotional distress. Plaintiff amended his complaint on June 25, 2018. On August 17,

2018, plaintiff voluntarily dismissed defendant Leasha Johnson ("Johnson") from this action without prejudice.[1]  Defendants Katrina Redmon ("Redmon") and Matt Scaparro ("Scaparro") timely filed the instant motion to dismiss plaintiff's entire complaint.

## STATEMENT OF FACTS

The facts alleged in the complaint[2] may be summarized as follows.  Plaintiff worked as the lead maintenance mechanic at Houston Moore, a property managed by the Housing Authority. (Compl. ¶¶ 15–16).  On Wednesday, November 18, 2015, William Vereen ("Vereen"), a contractor with a firm called Top Notch Cleaning Services ("Top Notch"), asked plaintiff to accompany him to 1618 South 15th Street to look at some damaged floor tiles.  (Id. ¶ 17).  Plaintiff met Vereen at the property.  (Id.).  Vereen showed plaintiff several loose floor tiles in the bathroom and asked plaintiff if the glue beneath the floor tiles was asbestos.  (Id.).  Plaintiff told Vereen to contact Johnson, and escorted Vereen to Johnson's office .  (Id. ¶¶ 17, 18).

Shortly thereafter, Johnson called plaintiff.  (Id. ¶ 18).  Johnson directed him to return to the unit and see if there was asbestos on the floor.  (Id.).  Plaintiff asked Johnson if Vereen was still in her office, and Johnson said yes.  (Id.).  Johnson did not tell plaintiff that she placed the call on speaker phone, and Vereen heard plaintiff tell Johnson that he believed asbestos was beneath the floor tiles.  (Id.).  Vereen accused plaintiff of failing to inform him that asbestos was being used in the units.  (Id.).

The following day, plaintiff met with defendant Scaparro, Johnson, and Vernice Hamilton ("Hamilton"), the Housing Authority's director of human resources.  (Id. ¶ 19).  Defendant Scaparro

---

[1]  The court constructively amends the case caption to reflect this dismissal.

[2]  Hereinafter, all references to the "complaint" in the text and to "Compl." in citations are to the amended complaint filed June 25, 2018, (DE 7), unless otherwise specified.

and Johnson allegedly made inconsistent accusations regarding plaintiff's conduct, including 1) that plaintiff told Vereen that the material beneath the floor tile was asbestos, 2) that plaintiff should have told Vereen he did not know if it was asbestos, and 3) that plaintiff knew there was asbestos beneath the floor tiles and failed to tell Vereen asbestos was present. (Id.). Defendant Scaparro stated that, going forward, maintenance personnel should respond to a contractor's question concerning presence of any asbestos by saying that they do not know. (Id. ¶ 20). Afterwards, Johnson directed plaintiff to assist with abatement of asbestos beneath the floors without providing him protective gear. (Id. ¶ 21).

On November 23, 2015, plaintiff was called to a meeting with Johnson and defendant Scaparro. (Id. ¶ 22). Defendant Scaparro informed plaintiff that he was sending plaintiff home pending investigation of the incident on November 18, 2015. (Id.). Later that same day, defendant Scaparro informed plaintiff the Housing Authority was terminating plaintiff employment for a willful "violation" of material facts regarding the possibility of asbestos located at Houston Moore. (Id. ¶¶ 22, 23).

Since becoming chief executive officer ("CEO") of the Housing Authority, Redmon has allegedly fired or forced out at least 28 employees. (Id. ¶ 24). Approximately 17 out of 28 employees were African-American. (Id.). Plaintiff alleges that such a percentage is disproportionate when compared to the presence of African-Americans in the general population of New Hanover county. (Id.). Plaintiff also generally alleges that several African-American former employees have accused the Housing Authority of discrimination. (Id. ¶ 27).

## COURT'S DISCUSSION

A.      Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.   In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.      Analysis

The court takes up each of plaintiff's federal claims, followed by plaintiff's state law claims.

1.      42 U.S.C. § 1983

"Under 42 U.S.C. § 1983, a plaintiff must establish three elements to state a cause of action: (1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." Jenkins v. Medford, 119 F.3d 1156, 1159–60 n.3 (4th Cir. 1997) (en banc) (citing 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988)).  Plaintiff points to four different sources of federal rights: the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.[3]  The court first considers plaintiff's equal protection and dues process claims under the Fourteenth Amendment.  The court then addresses plaintiff's First, Fourth, and Fifth

---

[3] Plaintiff's claims for violation of state public policy are not actionable under § 1983.  See Snider Int'l Corp. v. Town of Forest Heights, Md., 739 F.3d 140, 145 (4th Cir. 2014).

Amendment rights. Finally, the court analyzes plaintiff's remaining official capacity claim against the Housing Authority for plaintiff's exposure to asbestos.

a.      Fourteenth Amendment Equal Protection

The Fourteenth Amendment prevents any state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." Vill. of Arlington Heights v. Metro. Hous. Dev. Corp., 429 U.S. 252, 264–65 (1977); Washington v. Davis, 426 U.S. 229, 240 (1976); Williams v. Hansen, 326 F.3d 569, 583–84 (4th Cir. 2003) (internal citations omitted). "Necessarily, an invidious discriminatory purpose may often be inferred from the totality of the relevant facts." Davis, 426 U.S. at 242; see Arlington Heights, 429 U.S. at 266–67.

"[O]fficial action will not be held unconstitutional solely because it results in a racially disproportionate impact." Arlington Heights, 429 U.S. at 264–65 (citing Davis, 426 U.S. at 242); N. Carolina State Conference of NAACP v. McCrory, 831 F.3d 204, 231 (4th Cir. 2016) ("[P]laintiffs asserting [claims of intentional discrimination] must offer other evidence that establishes discriminatory intent in the totality of the circumstances."). A narrow exception to this rule applies when "a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action." Arlington Heights, 429 U.S. at 266; see Gomillion v. Lightfoot, 364 U.S. 339, 340–41 (1960) (holding unconstitutional the legislature changing the boundaries of Tuskegee from a square to an "uncouth" 28-sided figure, reducing the African-American voting population from 400 to five); Yick Wo v. Hopkins, 118 U.S. 356, 374 (1886) (finding unequal administration where over 200 applicants of Chinese origin were uniformly denied permits to run a laundromat while 80 others who were not of Chinese origin were permitted to carry on the same business under similar

conditions).

Plaintiff alleges that 17 of 28 employees were terminated or forced out by the Housing Authority while Redmon was CEO were African-American. (Compl. ¶ 24). Plaintiff further alleges such terminations are disproportionate compared to the general population of New Hanover county, which includes approximately ten percent African-Americans. (Id.). However, this disparate impact alone falls short of the stark trends sufficient to give rise to an inference of discriminatory purpose. Therefore, plaintiff must allege additional facts from which the court may reasonably infer that plaintiff's termination was the result of invidious discrimination.

The only other allegation plaintiff relies upon to illustrate discriminatory intent is that several African-American former employees of the Housing Authority protested discrimination and retaliation by the Housing Authority. (Id. ¶ 27). From this general allegation, plaintiff expects the court to conclude defendants plausibly acted with discriminatory intent. However, such a vague allegation requires the court to make unwarranted inferences about unspecified individuals making unsubstantiated claims of discrimination and retaliation. The complaint also does not clarify if these grievances were against defendants or germane to plaintiff's termination. The court will not credit the speculative inference that because someone at some time alleged discriminatory acts by the Housing Authority, defendants terminated plaintiff because of his race.

Plaintiff argues his equal protection claim should proceed because he pleads a prima facie case under Title VII of the Civil Rights Act of 1964 ("Title VII"). (See Resp. Opp. (DE 31) at 13–19 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)).

"Courts may apply the standards developed in Title VII litigation to similar litigation under § 1983." Beardsley v. Webb, 30 F.3d 524, 529 (4th Cir. 1994). Like the equal protection clause, "Title VII . . . requires establishing intentional discrimination." Spencer v. Virginia State Univ., 919

F.3d 199, 207 (4th Cir. 2019). "Absent direct evidence, the elements of a prima facie case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010). Even applying the Title VII framework to plaintiff's equal protection claim, plaintiff fails to plausibly show different treatment from similarly situated employees outside the protected class for the reasons discussed above. See McCleary-Evans v. Maryland Dep't of Transp., State Highway Admin., 780 F.3d 582, 586 (4th Cir. 2015) (concluding that allegations merely consistent with discrimination do not support a reasonable inference that decision makers were motivated by bias). Plaintiff's § 1983 claim under the equal protection clause is dismissed.

b.     Fourteenth Amendment Due Process

Plaintiff asserts defendants denied him due process by not providing a full and fair grievance procedure and arbitrarily terminating him based on unfettered discretion. No state may "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To claim a procedural due process violation, plaintiff must plausibly allege "(1) [he] had property or a property interest (2) of which [the state] deprived [him] (3) without due process of law." Sylvia Dev. Corp. v. Calvert Cty., Md., 48 F.3d 810, 826 (4th Cir. 1995). To claim a substantive due process violation, plaintiff must allege (1) that [he] had property or a property interest; (2) that the state deprived them of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency." Id. at 827.

A government employee "has a protected property interest in continued public employment only if he can show a 'legitimate claim of entitlement' to his job under state or local law." Andrew

v. Clark, 561 F.3d 261, 269 (4th Cir. 2009). "A public employee in an at-will position cannot establish such an entitlement, and thus cannot claim any Fourteenth Amendment due process protection." Id.; Knight v. Vernon, 214 F.3d 544, 553 (4th Cir. 2000); Pittman v. Wilson Cty., 839 F.2d 225, 229 (4th Cir. 1988). "Under North Carolina law, employment is generally presumed to be 'at-will' in the absence of a contract establishing a definite employment duration or a statute or ordinance restricting an employee's discharge." Jackson v. Long, 102 F.3d 722, 728 (4th Cir. 1996).

Plaintiff has not alleged a legitimate claim of entitlement to his employment based on a contract of definite employment duration or a statute or ordinance restricting his discharge. To the contrary, plaintiff implies that he is an "at-will" employee, based on the allegation that defendants fired African-American employees "[i]n detrimental reliance upon North Carolina's 'at-will' employment status." (See Compl. ¶ 47). Consequently, plaintiff's due process claim, whether substantive or procedural, fails because plaintiff has not alleged a property interest in his continued employment. The court dismisses plaintiff's due process claims under § 1983.[4]

      c.     First Amendment

Plaintiff contends defendants violated his rights under the First Amendment. The First Amendment prohibits "abridging the freedom of speech." U.S. Const. amend. I. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." Garcetti v. Ceballos, 547 U.S. 410, 421 (2006); see Hunter v. Town of Mocksville, N. Carolina, 789 F.3d 389, 397 (4th Cir. 2015). "The critical question under Garcetti is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not

_____

[4] The court addresses plaintiff's claim that Johnson unlawfully exposed him to asbestos below.

whether it merely concerns those duties." Lane v. Franks, 573 U.S. 228, 240 (2014).

The only speech at issue in this case is what plaintiff told Vereen and Johnson regarding whether or not there was asbestos under the floor tiles in 1618 South 15th Street. (Compl. ¶¶ 17, 18). Plaintiff's communications were made pursuant to his official duties as a maintenance mechanic working for the Housing Authority. (See Compl. ¶¶ 16–18). Plaintiff's First Amendment claim is dismissed.

### d.     Fourth Amendment

Plaintiff asserts without specification that his Fourth Amendment rights were violated by his termination. The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. Plaintiff appears to allege a Fourth Amendment violation based on defendants infringing on his "personal security," enumerating the same arguments for his Fourth Amendment claim as for his First, Fifth, and Fourteenth Amendment claims. (See Compl. ¶¶ 37, 40). None of the conduct alleged in support of plaintiff's § 1983 action constitutes a search or seizure, let alone one that is unreasonable. (See id. ¶ 40). Therefore, plaintiff's Fourth Amendment claim is dismissed.

### e.     Fifth Amendment

Plaintiff claims violation of his rights under the Fifth Amendment. The guarantees of equal protection and due process are applied to the states through the Fourteenth Amendment, rather than the Fifth Amendment. See U.S. Const. amend. XIV ("No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."); see Bolling v. Sharpe, 347 U.S. 497, 498–99

(1954). Plaintiff's complaint does not implicate any other rights guaranteed under Fifth Amendment. See U.S. Const. amend V. Therefore, the court dismisses plaintiff's Fifth Amendment claim.

      f.    Official Capacity Claim

Plaintiff separately claims Johnson required him to remove asbestos without protective gear at 1618 South 15th Street, violating his right to substantive due process. (Compl. ¶ 21); see Slaughter v. Mayor & City Council of Baltimore, 682 F.3d 317, 322 (4th Cir. 2012). However, plaintiff voluntarily dismissed Johnson from this suit. (See Notice (DE 10)). As a result, Johnson's conduct only remains before this court under § 1983 through official capacity claims against defendants Redmon and Scaparro.

"As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985). "A municipality is not subject to section 1983 liability simply because a claimant is able to identify conduct attributable to the municipality." Riddick v. Sch. Bd. of City of Portsmouth, 238 F.3d 518, 524 (4th Cir. 2000) (internal quotations omitted) (citing Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 406–07 (1997)). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Hunter v. Town of Mocksville, N. Carolina, 897 F.3d 538, 553–54 (4th Cir. 2018) (quoting Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 694 (1978)); see Pembaur v. City of Cincinnati, 475 U.S. 469, 481–83 (1986).

Plaintiff does not allege a policy or custom attributable to the Housing Authority deprived him of due process. See Hunter, 897 F.3d at 553–54. He also fails to allege that Johnson had final

10

policymaking authority to set and implement policy of the Housing Authority concerning use of protective gear in asbestos abatement.  See Pembaur, 475 U.S. at 483 n.12.  Plaintiff's remaining official capacity claim for Johnson's conduct is dismissed.

2.       42 U.S.C. § 1985

Plaintiff alleges defendants illegally conspired against him.  "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense."  Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013) (quoting Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011)).

"If two or more persons in any State . . . conspire . . . for the purpose of depriving . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . ." then those persons shall be liable.  42 U.S.C. § 1985(3).  "It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy. A corporation cannot conspire with itself any more than a private individual can, and it is the general rule that the acts of the agent are the acts of the corporation."  Buschi v. Kirven, 775 F.2d 1240, 1251–52 (4th Cir. 1985) (applying the intracorporate conspiracy doctrine to a claim under § 1985).  "[S]uing the agents individually does not destroy the immunity granted under the doctrine."  Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 353 (4th Cir. 2013).  Two exceptions to the doctrine apply: 1) "where a co-conspirator possesses a personal stake independent of his relationship to the corporation," and 2) "where the agent's acts were not authorized by the corporation."  Id. (internal citations omitted).

Plaintiff attempts to allege that defendants and Johnson, all employees of the Housing Authority, conspired to terminate plaintiff's employment.  However, plaintiff's complaint is entirely

devoid of any allegation that defendants "acted other than in the normal course of their corporate duties" or were motivated by some independent personal gain.  Id.; Buschi, 775 F.2d at 1252.[5] Plaintiff's § 1985 claim is dismissed.

3.      42 U.S.C. § 1986

Plaintiff asserts defendants failed to prevent a conspiracy to violate his civil rights.  "Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do . . . shall be liable to the party injured . . . ."  42 U.S.C. § 1986.  "A cause of action based upon § 1986 is dependent upon the existence of a claim under § 1985."   Trerice v. Summons, 755 F.2d 1081, 1085 (4th Cir. 1985). Since the court has dismissed plaintiff's § 1985 claim, the court also dismisses his § 1986 claim. See id.

4.      State Law Claims

Having determined that plaintiff's claims under 42 U.S.C. §§ 1983, 1985, and 1986 fail under Rule 12(b)(6), only plaintiff's state law claims for negligent supervision, defamation, and intentional infliction of emotional distress claims remain.[6]  Where jurisdiction in this matter is based upon federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367, it is appropriate to consider whether continued exercise of jurisdiction over plaintiff's

---

[5] In any event, plaintiff also fails to allege any facts which plausibly show defendants Redmon, Scaparro, or the Housing Authority conspired to terminate plaintiff in violation of his constitutional rights.  See Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995) ("[T]o prove a section 1985 'conspiracy,' a claimant must show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights.").

[6] Plaintiff also summarily alleges a state common law claim for "wrongful termination" without setting forth the grounds for such a claim.  (See Compl. ¶ 5).  The court addresses this claim together with plaintiff's other state law claims.

12

state law claims is warranted.  See Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1), 12(h)(3)).

"A district court may decline to exercise supplemental jurisdiction over a pendent state law claim if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

Where the court has dismissed all claims over which it has original jurisdiction, it declines to exercise supplemental jurisdiction over plaintiff's remaining state law claims.  Plaintiff's state law claims are dismissed for lack of subject matter jurisdiction.  Defendants' motion to dismiss plaintiff's state common law claims is denied as moot.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss (DE 19) is GRANTED IN PART and DENIED AS MOOT IN REMAINING PART.  Plaintiff's federal claims under 42 U.S.C. §§ 1983, 1985, and 1986 are DISMISSED for failure to state a claim upon which relief can be granted. Plaintiff's remaining state law claims are DISMISSED for lack of subject matter jurisdiction.  The clerk is DIRECTED to close this case.

SO ORDERED, this the 17th day of April, 2019.

LOUISE W. FLANAGAN
United States District Judge